UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | | |
|---|---|---|
| DIANA I. (JOHNSON) MARTZ, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CAUSE NO. 1:07-CV-00219 |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## OPINION AND ORDER

Plaintiff Diana Martz f/k/a Diana Johnson appeals to the district court from a final decision of the Commissioner of Social Security ("Commissioner") denying her application under the Social Security Act (the "Act") for a period of disability and Disability Insurance Benefits ("DIB").[1] (*See* Docket # 1.)  For the following reasons, the Commissioner's decision will be AFFIRMED.

## I.  PROCEDURAL HISTORY

Martz applied for DIB on November 17, 2003, alleging that she became disabled as of May 28, 2000. (Tr. 132, 134, 159.)  The Commissioner denied her application initially and upon reconsideration, and Martz requested an administrative hearing. (Tr. 33-34, 101-10.)  On May 31, 2006, Administrative Law Judge (ALJ) Steven J. Neary conducted a hearing at which Martz, who was represented by counsel, Martz's husband, and a vocational expert ("VE") testified. (Tr. 391-416.)

---

[1] All parties have consented to the Magistrate Judge. *See* 28 U.S.C. § 636(c).

On February 21, 2007, the ALJ rendered an unfavorable decision to Martz, concluding that she was not disabled despite the limitations caused by her impairments because she could perform her past relevant work as a retail cashier and assembler. (Tr. 13-21.)  The Appeals Council denied Martz's request for review, making the ALJ's decision the final decision of the Commissioner. (Tr. 3-9.)  Martz filed a complaint with this Court on August 21, 2007, seeking relief from the Commissioner's final decision. (Docket # 1.)

## II.  MARTZ'S ARGUMENTS

Martz alleges four flaws with the Commissioner's final decision.  Specifically, she claims that the ALJ: (1) improperly determined that her testimony of debilitating limitations was not entirely credible; (2) erred at step two by concluding that her anxiety and depression, whether considered singly or in combination with her other impairments, are not severe; (3) improperly concluded at step three that her impairments, whether considered singly or in combination, failed to meet a listing; and (4) improperly decided at step four that she could perform her past relevant work when the VE testified that a hypothetical individual with her subjective complaints could not sustain any employment. (Pl.'s Mem. of Law in Supp. of Reversal of Administrative Law Judge's Denial of Social Security Disability Benefits ("Opening Br.") 4-15.)

## III.  FACTUAL BACKGROUND[2]

### *A.  Background*

At the time of the ALJ's decision, Martz was forty-nine years old, had a high school education, and possessed work experience as a retail cashier, home health care aide, and

---

[2] The administrative record in this case is voluminous (416 pages), and the parties' disputes involve only small portions of it.  Therefore, in the interest of brevity, this opinion recounts only the portions of the record necessary to the decision.

2

assembler. (Tr. 148, 160, 164, 203.)  Martz alleges that she became disabled as of May 28, 2000, due to status post cervical fusion, fibromyalgia, anxiety, and depression. (Tr. 132, 159.)  Despite her 2000 alleged onset date, Martz continued to work in 2001, 2002, and 2003, earning between $4,000 and $8,000 a year. (Tr. 122, 166, 207, 394-96.)

At the time of the hearing, Martz lived with her husband, whom she had married one year earlier.[3] (Tr. 394, 411.)  When asked why she could not work, Martz stated that she has constant pain from her neck to her arms and in her hips and knees, rating it as a "eight" on a scale of one to ten. (Tr. 396, 409.)  She further explained that her back "gets really sore" and that her arms and legs "feel very tired like [she's] going to not be able to stand up anymore." (Tr. 396.)  She analogized it to having the flu, "like an aching in your joints." (Tr. 397-98.)  Martz further stated that she has trouble with her hands and with lifting because her arms "feel like a 100 tons on my hands and they just don't want to do anything." (Tr. 399.)  She testified that she takes medications for her pain, which do not entirely relieve it and make her feel tired. (Tr. 397.)

She explained that certain activities aggravate her pain, such as taking long walks, performing yard work, doing the laundry, and sweeping the floor, and that she gets "stiff and can hardly get up" if she sits over twenty minutes. (Tr. 398.)  Martz stated that she can walk about two blocks and stand for fifteen minutes, and that "[p]icking up small things is very hard . . . to do." (Tr. 398-99.)  She elaborated that it "hurts to lift anything," though she admitted that she can lift a gallon of milk comfortably. (Tr. 399.)

When asked to describe a typical day, Martz stated that she performs household tasks

---

[3] Martz's husband also testified at the hearing and essentially corroborated Martz's complaints of pain and fatigue, difficulty with movement, and intermittent tearfulness. (Tr. 411-12.)

such as laundry and dishes, interspersed with frequent rest periods during which she reads, listens to music, or watches television. (Tr. 399, 409-10.)  She also drives a car for short distances, such as to do her grocery shopping. (Tr. 400.)  She states that she can dress and shower independently, though her husband has to help her if she takes a bath. (Tr. 400.)

As to her work history, Martz first testified that she had not worked anywhere since 2000, the year of her alleged onset date. (Tr. 394.)  When confronted by the ALJ with her reported earnings from 2001 through 2003 from a variety of employers, Martz explained: "I can't remember where I was working. . . . [M]y mind doesn't work very good right now." (Tr. 394-95.)  Later in the hearing, the ALJ observed that Martz had no difficulty recalling all of her medications and their specific dosages, which she explained by stating that, in contrast to her work history, she has her medications and dosage posted in her cabinet at home and has to write them down at her physician appointments. (Tr. 397.)

### B. *Summary of the Medical Evidence*

In 1988, Martz was injured at work when a tire exploded, pushing her suddenly backward to the floor and fracturing her jaw, cheekbone, and nose. (Tr. 401-02.)  After receiving treatment for neck pain over the years, in 1999 Martz had her C5, C6, and C7 vertebrae fused. (Tr. 402-03.)

On April 3, 2003, Martz visited Dr. Fernando Escovar, a family practitioner, for complaints of body aches and sore throat. (Tr. 220.)  Two months later, Dr. Escovar diagnosed her with fibromyalgia and an anxiety disorder. (Tr. 214.)

In July 2003, x-rays indicated that the orthopaedic instrumentation fusing Martz's C5, C6, and C7 vertebrae appeared to be in good position and that there were early osteoarthritic

changes posteriorly in the facet joints. (Tr. 232.)

During 2003, Martz was seen by Dr. Escovar and Dr. Richard Hastings, an internal medicine physician, each prescribing her various psychotropic medications, including Paxil, Effexor, and Lexapro.[4] (*See, e.g.*, Tr. 214, 219-20, 227-28, 231, 242.)  In December 2003, Martz's family reported that her medications controlled her anxiety attacks and that she enjoyed being around people, reads up to three books a week, and has no difficulty focusing on television programs. (Tr. 173-74.)

On February 3, 2004, Martz was evaluated by Dr. Michael Kennedy at the request of the state agency. (Tr. 252-56.)  She complained of pain at a level "ten" on a one-to-ten scale, complaining of diffuse tenderness to light palpation everywhere in her body; Dr. Kennedy noted "trigger points" over both scapulas, bilaterally in the low back over both hips, and in the knees. (Tr. 252, 254-55.)  Upon examination, Martz had a normal gait, normal range of motion of her neck, normal or only slightly limited range of motion in her spine and other joints, and full dexterity and grip strength in both hands. (Tr. 254-55.)  She could walk on toes and heels, tandem walk, stand on either leg alone, and squat without difficulty. (Tr. 255.)  A neurological examination was normal. (Tr. 255.)  Dr. Kennedy opined that there were "no findings that would limit [Martz's] ability to perform normal, work related duties." (Tr. 255.)

About that same time, Dr. Hastings referred Martz to Dr. Peter Carney, a pain specialist, who performed a series of diagnostic facet blocks in April and May 2004. (Tr. 276-93, 311-29, 339-62.)  Martz reported that the blocks provided her with some short-term pain relief. (Tr. 325, 329, 359.)  In April 2004, Martz reported having pain after sitting for one hour, standing for one

---

[4] Martz was also given samples of Paxil by Dr. Porsche in April 2002. (Tr. 212.)

hour, or walking for fifteen minutes. (Tr. 321.)  Dr. Carney found no neurological abnormality and observed no abnormality in Martz's motion or strength, though he noted swelling, tenderness, and spasm in her neck. (Tr. 323.)  Also in April 2004, a CT scan of Martz's cervical spine indicated generalized disk bulges at C2-3, C3-4, and C4-5, revealing postoperative changes after her fusion but no convincing evidence of canal stenosis. (Tr. 258.)

In January 2006, Dr. Casey Kroh assumed Martz's care. (Tr. 368.)  The doctor noted that Martz had positive trigger points at the base of her skull and neck and at the supraspinatus region bilaterally. (Tr. 368.)  Dr. Kroh thought that Martz probably had fibromyalgia but ordered some screening tests and advised Martz to decrease her significant consumption of caffeine. (Tr. 368.) One month later, Dr. Kroh noted that the test results suggested only minor abnormalities, adjusted Martz's medications, and advised her to quit smoking and to decrease her nightly alcohol intake. (Tr. 367.)  In April 2006, Dr. Kroh observed that Martz had good, active range of motion in her cervical spine; good strength in her arms; and a normal gait. (Tr. 366.)  X-rays of Martz's cervical spine were consistent with her April 2004 CT scan, except that the head of one of the screws affixing the fusion plate was noted to be fractured, though the plate was still intact and the neuroforamen appeared to be well-preserved.[5] (Tr. 390.)

## IV.  STANDARD OF REVIEW

Section 405(g) of the Act grants this Court "the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the

---

[5] After the ALJ issued his decision, Martz submitted evidence to the record indicating that in March 2007 she sought the services of a clinical psychologist who diagnosed her with a major depressive disorder. (Tr. 92.) However, she concedes that this evidence, while part of the administrative record, cannot be considered by the Court at this juncture because the Appeals Council declined to review her case and thus this evidence is not part of the Commissioner's final decision. (Opening Br. 9); *see Eads v. Sec'y of Dep't of Health & Human Servs.*, 983 F.2d 815, 817-18 (7th Cir. 1993).

[Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). The Court's task is limited to determining whether the ALJ's factual findings are supported by substantial evidence, which means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005) (citation omitted). The decision will be reversed only if it is not supported by substantial evidence or if the ALJ applied an erroneous legal standard. *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000).

To determine if substantial evidence exists, the Court reviews the entire administrative record but does not re-weigh the evidence, resolve conflicts, decide questions of credibility, or substitute its judgment for the Commissioner's. *Id.* Rather, if the findings of the Commissioner are supported by substantial evidence, they are conclusive. *Jens v. Barnhart*, 347 F.3d 209, 212 (7th Cir. 2003). Nonetheless, "substantial evidence" review should not be a simple rubber-stamp of the Commissioner's decision. *Clifford*, 227 F.3d at 869.

## V.  ANALYSIS

### A.  *The Law*

Under the Act, a claimant is entitled to DIB if she establishes an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to . . . last for a continuous period of not less than 12 months." 42 U.S.C. §§ 416(i)(1), 423(d)(1)(A). A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

7

The Commissioner evaluates disability claims pursuant to a five-step evaluation process, requiring consideration of the following issues, in sequence: (1) whether the claimant is currently unemployed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals one of the impairments listed by the Commissioner, *see* 20 C.F.R. § 404, Subpt. P, App. 1; (4) whether the claimant is unable to perform her past work; and (5) whether the claimant is incapable of performing work in the national economy.[6] *See* 20 C.F.R. § 404.1520; *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001).  An affirmative answer leads either to the next step or, on steps three and five, to a finding that the claimant is disabled. *Zurawski v. Halter*, 245 F.3d 881, 886 (7th Cir. 2001).  A negative answer at any point other than step three stops the inquiry and leads to a finding that the claimant is not disabled. *Id.*  The burden of proof lies with the claimant at every step except the fifth, where it shifts to the Commissioner. *Clifford*, 227 F.3d at 868.

### B. The ALJ's Decision

On February 21, 2007, the ALJ rendered his opinion. (Tr. 13-21.)  He found at step one of the five-step analysis that Martz had not engaged in substantial gainful activity since her alleged onset date in May 2000, even though she had earnings ranging from $4,000 to $8,000 each year from 2001 through 2003. (Tr. 15.)  At step two, the ALJ stated that Martz's fibromyalgia and status post cervical fusion were severe impairments, but that her anxiety and depression were not. (Tr. 15-16.)  The ALJ then at step three determined that Martz's impairment or combination of impairments was not severe enough to meet a listing. (Tr. 16-17.)

---

[6] Before performing steps four and five, the ALJ must determine the claimant's residual functional capacity ("RFC") or what tasks the claimant can do despite her limitations. 20 C.F.R §§ 404.1520(e), 404.1545(a). The RFC is then used during steps four and five to help determine what, if any, employment the claimant is capable of. 20 C.F.R. § 404.1520(e).

Before proceeding to step four, the ALJ found Martz's subjective complaints not entirely credible and assigned her the following RFC:

> [T]he claimant has the residual functional capacity to perform work at the light exertional level as defined in the Social Security Regulations and Rulings but finds that the claimant cannot perform work which requires repetitive pushing and pulling.

(Tr. 17.)

Based on this RFC and the VE's testimony, the ALJ concluded at step four that Martz was capable of performing her past relevant work as a retail cashier and assembler. (Tr. 20.) Therefore, Martz's claim for DIB was denied. (Tr. 21.)

### C. The ALJ's Credibility Determination Will Not Be Disturbed

Martz first contends that the ALJ erred when he discounted the credibility of her testimony of debilitating limitations because she continued to work in the three years following her alleged onset date. Martz's first argument fails to warrant a remand of the Commissioner's final decision.

Because the ALJ is in the best position to evaluate the credibility of a witness, his determination is entitled to special deference. *Powers v. Apfel*, 207 F.3d 431, 435 (7th Cir. 2000). If an ALJ's determination is grounded in the record and articulates his analysis of the evidence "at least at a minimum level," *Ray v. Bowen*, 843 F.2d 998, 1002 (7th Cir. 1988); *see Ottman v. Barnhart*, 306 F. Supp. 2d 829, 838 (N.D. Ind. 2004), creating "an accurate and logical bridge between the evidence and the result," *Ribaudo v. Barnhart*, 458 F.3d 580, 584 (7th Cir. 2006), his determination will be upheld unless it is "patently wrong." *Powers*, 207 F.3d at 435; *see also Carradine v. Barnhart*, 360 F.3d 751, 754 (7th Cir. 2004) (remanding an ALJ's credibility determination because the ALJ's decision was based on "serious errors in reasoning

9

rather than merely the demeanor of the witness . . . .").

After reviewing Martz's earnings from 2001, 2002, and 2003, the ALJ observed that Martz's "level of work activity clearly reflects a greater ability to perform work-related activity than was testified to by the claimant." (Tr. 15; *see also* Tr. 20.) Indeed, it is proper for an ALJ to consider a claimant's daily activities as a factor when assessing the credibility of a claimant's complaints. 20 C.F.R. § 404.1529(c); SSR 96-7p; *see Schmidt*, 395 F.3d at 746-47 (considering claimant's performance of daily activities as a factor when discounting claimant's credibility); *Steward v. Bowen*, 858 F.2d 1295, 1302 (7th Cir. 1988) (finding that claimant's ability to perform part-time work was inconsistent with her subjective complaints of pain). Here, the ALJ properly considered as a factor in his credibility analysis that in the three years following her alleged onset date, Martz's daily activities included performing some work; yet, he did not improperly equate this evidence with an ability to work full-time. *Compare Schmidt*, 395 F.3d at 746-47 (considering the claimant's performance of daily activities as a factor when discounting claimant's credibility), *and Scheck v. Barnhart*, 357 F.3d 697, 703 (7th Cir. 2004), *with Mendez v. Barnhart*, 439 F.3d 360, 362-63 (7th Cir. 2006) (cautioning ALJs "against placing undue weight on a claimant's household activities in assessing the claimant's ability to hold a job outside the home"), *and Gentle v. Barnhart*, 430 F.3d 865, 867 (7th Cir. 2005). Thus, the ALJ's consideration of Martz's work activities after her alleged onset date was without error.

Furthermore, Martz's work history is not the only reason the ALJ cited for his conclusion that her testimony was not entirely credible. The ALJ also discounted her credibility because he thought the objective medical evidence, in particular "the most recent medical evidence," did not support her complaints to the extent she alleged. (Tr. 20.) An ALJ is entitled to consider the

10

objective medical evidence, or lack thereof, as a factor in assessing Martz's credibility. *See* 20 C.F.R. § 404.1529(c)(2); SSR 96-7p; *Smith v. Apfel*, 231 F.3d 433, 439 (7th Cir. 2000) ("[A]n ALJ may consider the lack of medical evidence as probative of the claimant's credibility.").

In short, the ALJ adequately built an accurate and logical bridge between the evidence of record and his conclusion that Martz's testimony was not entirely credible, and his determination is not "patently wrong." *See Shramek v. Apfel*, 226 F.3d 809, 811 (7th Cir. 2000); *Powers*, 207 F.3d at 435. The Court will not accept Martz's plea to reweigh the evidence in the hope that it will come out in her favor this time. *See Flener ex rel. Flener v. Barnhart*, 361 F.3d 442, 447 (7th Cir. 2004). Therefore, the ALJ's credibility determination, which is entitled to special deference, *Powers*, 207 F.3d at 435, will not be disturbed.

### D.  Martz's Challenge to the ALJ's Step Two Finding Is Inconsequential

Next, Martz asserts that the ALJ's conclusion at step two that her anxiety and depression were not severe impairments should be reversed. Martz's second argument, however, is inconsequential.

The ALJ's step two determination is a threshold analysis that requires the claimant to show that he has at least *one* severe impairment. *See Golembiewski v. Barnhart*, 322 F.3d 912, 918 (7th Cir. 2003) ("Having found that one or more of [the claimant's] impairments was severe, the ALJ needed to consider the aggregate effect of the entire constellation of ailments . . . ." (internal quotation marks, citation, and emphasis omitted)); *Hickman v. Apfel*, 187 F.3d 683, 688 (7th Cir. 1999) ("[I]t is quite apparent that severity is merely a threshold requirement."). If the claimant has one or more severe impairments, the five-step analysis will continue, with the ALJ considering the combined effect of all of the claimant's impairments without regard to whether

11

any one impairment, if considered separately, would be of sufficient severity. 20 C.F.R. § 404.1523; *see Cunningham v. Apfel*, 222 F.3d 496, 501 (8th Cir. 2000).

Here, the ALJ found at step two that Martz's fibromyalgia and status post cervical fusion were severe impairments; thus, he proceeded to step three of the sequential evaluation process. At step three, in compliance with 20 C.F.R. § 404.1523, the ALJ analyzed whether Martz had "an impairment *or combination of impairments*" that meets or medically equals a listing. (*See* Tr. 16-17 (emphasis added).)  Therefore, because the ALJ found that Martz had at least one severe impairment at step two and properly continued the sequential evaluation process, Martz's second argument fails to necessitate a remand and warrants no further discussion.

### E.  The ALJ's Step Three Determination That Martz's Impairments Do Not Meet or Medically Equal a Listing Is Supported by Substantial Evidence

Martz next conclusorily argues that her medical records "clearly and unerringly establish impairments, individually and in combination, that meet or equal the impairment criteria set forth at 20 C.F.R. Pt. 404, Subpt P., App. 1." (Opening Br. 14.)  Martz's third argument is also unavailing.

The listings describe impairments that are considered presumptively disabling when specific criteria are met. *See* 20 C.F.R. § 404.1525(a).  To meet or equal a listed impairment, a claimant must satisfy all of the criteria set forth in the listing. *See Maggard v. Apfel*, 167 F.3d 376, 380 (7th Cir. 1999).  The burden of proving that her condition meets or equals a listed impairment rests with the claimant. *Id.*; *see also Shinaberger v. Barnhart*, No. 1:05-cv-0276-DFH-TAB, 2006 WL 3206338, at *11 (S.D. Ind. Mar. 31, 2006) ("In demonstrating medical equivalence, the claimant has the burden of presenting 'medical findings equal in severity to *all* the criteria for the one most similar listed impairment.'" (quoting *Sims v. Barnhart*, 309 F.3d

12

424, 428 (7th Cir. 2002))).  Yet, the Seventh Circuit Court of Appeals has stated that, though the burden of proof rests with the claimant, an ALJ "should mention the specific listing he is considering and his failure to do so, if combined with a 'perfunctory analysis,' may require a remand." *Ribaudo*, 458 F.3d at 583-84 (citing *Barnett v. Barnhart*, 381 F.3d 664, 670 (7th Cir. 2004); *Brindisi ex rel. Brindisi v. Barnhart*, 315 F.3d 783, 786 (7th Cir. 2003)); *see also Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002).

>Here, the ALJ rendered the following step three analysis:
>
>>The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 . . . .  No treating or examining physician or diagnostic or imaging test has reported findings evidencing that the claimant's impairments meet or equal a listed impairment, either individually or in combination.

(Tr. 16-17.)  Therefore, the ALJ did indeed fail to mention the specific listings that he considered.

Yet, in this instance, we find that the ALJ's omission is not fatal and that his analysis is adequate.  The ALJ concisely explained his reasoning for his step three conclusion – that is, that no medical source of record reported findings that evidenced that Martz's impairments met or equaled a listing.  Furthermore, in contrast to Martz's assertions, it is clear from his decision that the ALJ did in fact consider the combined impact of all of Martz's impairments in determining whether she met or equaled a listing, as he expressly stated so at least twice in his step three finding. *See Steward*, 858 F.2d at 1298.

Indeed, it is Martz's burden here to establish that her impairments meet or equal a listed impairment, *Maggard*, 167 F.3d at 380, yet she fails to even identify the specific listings that she believes she satisfies.  Instead, she simply sets forth snippets of medical evidence reflecting her

13

diagnoses and her subjective complaints of pain, offering *no* analysis as to how this evidence satisfies any specific listing. (*See* Opening Br. 8-9.)  In fact, Martz seemingly ignores that Dr. Kennedy stated that she had a normal gait, normal range of motion of her neck, normal or only slightly limited range of motion in her spine and other joints, and full dexterity and grip strength in both hands, opining that there were "no findings that would limit [Martz's] ability to perform normal, work related duties." (Tr. 255.)  Martz further turns a blind eye to the fact that Dr. Carney found no neurological abnormality and observed no abnormality in her motion and strength (Tr. 323), and that Dr. Kroh noted that she had good, active range of motion in her cervical spine, good strength in her arms, and a normal gait (Tr. 366).

   Moreover, in reaching his decision, the ALJ relied upon the assessment of the state agency physicians, who concluded that Martz's impairments did not meet or equal a listing.  To explain, the state agency physicians completed Disability Determination and Transmittal forms at the initial and reconsideration levels and concluded that Martz was not disabled. (Tr. 33, 34.) The Seventh Circuit Court of Appeals has articulated that "[t]hese forms conclusively establish that consideration by a physician . . . designated by the Commissioner has been given to the question of medical equivalence at the initial and reconsideration levels of administrative review." *Scheck*, 357 F.3d at 700 (internal quotation marks and citations omitted). Consequently, "[t]he ALJ may properly rely upon the opinion of these medical experts." *Id*. (citing *Scott v. Sullivan*, 898 F.2d 519, 524 (7th Cir. 1990)); *see also* SSR 96-6p.

   In sum, the ALJ's step three finding that Martz's impairments, singly or in combination, failed to meet any listing is supported by substantial evidence.  Therefore, Martz's third argument also fails to warrant a remand of the Commissioner's final decision.

### *F. Martz's Challenge to the ALJ's Step Four Finding Is Meritless*

Finally, Martz contends that the ALJ erred by determining that she could perform her past relevant work when the VE testified that a hypothetical individual with her subjective complaints could not sustain any competitive employment. Martz's final argument seems to misunderstand the ALJ's sequential evaluation process and, consequently, is meritless.

At the hearing, in response to the first hypothetical posed by the ALJ the VE testified that a hypothetical individual with the same age, education, work experience, and RFC as Martz could perform her past relevant work as a retail cashier and assembler. (Tr. 413-15.) The ALJ then followed up that hypothetical with another: "Now, assume if you will an individual the same age, education and work experience *who had limitations consistent with Ms. Martz's testimony*. With those limitations would that individual be capable of any of Ms. Martz's past employment or any other jobs that exist in significant numbers?" (Tr. 415 (emphasis added).) The VE responded that there would be no jobs available to such hypothetical individual. (Tr. 415.)

As Martz sees it, the VE's response to the ALJ's final hypothetical "answered the questions of both the fourth and fifth criteria to receive disability benefits." (Opening Br. 15.) What Martz fails to appreciate, however, is that the ALJ concluded before proceeding to step four that her testimony of debilitating limitations was *not entirely credible*, a finding that we affirmed *supra*. Therefore, the VE's response to the ALJ's second hypothetical question premised on full credibility is without significance. Rather, in concluding that Martz was not disabled, the ALJ properly relied upon the VE's testimony in response to his first hypothetical,

15

which accurately reflected Martz's RFC. *See Herron v. Shalala*, 19 F.3d 329, 337 (7th Cir. 1994) ("The hypothetical question posed by the ALJ to the VE must fully set forth the claimant's impairments to the extent they are supported by the medical evidence in the record."); *Prostka v. Barnhart*, No. 03 C 3764, 2004 WL 1151578, at *8-9 (N.D. Ill. Apr. 29, 2004) ("[A]n ALJ's hypothetical question need only include those work-related limitations supported by the medical evidence and found to exist by the ALJ." (citing *Steele v. Barnhart*, 290 F.3d 936, 942 (7th Cir. 2002))).

Therefore, Martz's final challenge to the ALJ's decision is unavailing, and thus the Commissioner's final decision will be affirmed.

## VI.  CONCLUSION

For the reasons articulated herein, the decision of the Commissioner is AFFIRMED.  The Clerk is directed to enter a judgment in favor of the Commissioner and against Martz.

SO ORDERED.

Enter for this 8th day of April, 2008.

S/Roger B. Cosbey
Roger B. Cosbey,
United States Magistrate Judge
